## A00A0059. REEVES v. THE STATE.
(534 SE2d 179)

MILLER, Judge.

Richard Hoyt Reeves was tried before a jury and found guilty of trafficking amphetamine. His amended motion for new trial was denied, and this appeal followed. He enumerates the sufficiency of the evidence and the failure of the trial court to instruct the jury on

---

whether a witness for the State was an accomplice whose testimony required corroboration. Viewed in the light most favorable to the jury's verdict, the evidence showed the following.

Undercover Investigator Stidd made two purchases of methamphetamine from Peggy Sue Thomas and then arranged for Thomas to sell him four more ounces in exchange for $5,500. Thomas agreed to take Stidd to her supplier's house. Stidd gave Thomas $5,500 cash in $50 and $100 bills from which Stidd had photocopied the serial numbers. Thomas had Stidd drive to a trailer with the letters "R R" and an upside-down horseshoe over the door. Stidd observed as Thomas approached the trailer door and was met by a white male dressed in a black t-shirt and blue jeans and sporting tattoos down both arms. At trial, Stidd identified the white male as defendant Reeves.

Thomas and Reeves entered the trailer, and when they next came back into Stidd's view, Reeves was carrying a small cardboard box. Two minutes later, Thomas exited the trailer, entered Stidd's vehicle, and gave Stidd the same cardboard box. Stidd opened the box and found a plastic bag containing a substance emitting a strong chemical odor which Stidd recognized as methamphetamine.[1] Although Stidd had observed another man and a woman in the yard, he never saw either of them give any cardboard box to Thomas or Reeves.

Stidd and Thomas immediately departed. Two miles from the trailer, Stidd's vehicle was detained as part of a prearranged arrest. At that time, Stidd introduced himself to Thomas as a law enforcement officer and arrested her for sale of methamphetamine. Thomas possessed six of the identified $50 bills Stidd had given her for the sale. In a custodial statement, Thomas told police she met Reeves at the front of Reeves's trailer; that he was the one in the black t-shirt; that she gave him $5,200 of the $5,500 Stidd had given her; that Reeves went to the back of the trailer; and that Reeves returned with the cardboard box that she subsequently gave to Stidd.

Thomas had known Reeves since January 1997. On the night in question, she had no drugs on her person and no money but that which Stidd gave her. Thomas identified the "R R" trailer as where she met with Reeves. Inside the trailer, Reeves called Thomas to a back bedroom, where they were alone. There Thomas handed Reeves the money, and he gave her the cardboard box and $300 back. Thomas took the cardboard box directly out to Stidd without making any changes to the box and without adding or removing any drugs. Thomas was unable to make an in-court identification of defendant

---

[1] Chemical analysis by the State Crime Lab identified the substance as 3.6 ounces of methamphetamine.

as the seller but denied that she ever purchased a car from him or received a receipt for any down payment on a car.

Later that day, when defendant was arrested, he had eight $100 bills in a hidden compartment of his wallet. These bills were identified as part of the original money Investigator Stidd gave to Thomas. Reeves also had a note from Thomas confirming the terms of the sale, the "5 for 4000 thing." The arresting officer identified defendant in court as the man from Reeves's trailer who had been under observation since Stidd and Thomas left.

Reeves testified in his own defense, admitting that Thomas had been to his trailer and had given him $800 but that this was a down payment for a car, as evidenced by a receipt drawn by his business partner. Reeves also testified that his partner, similarly attired, was in his trailer at all times when Thomas was present. But there is no evidence that this other man had tattoos on his arms such as Reeves displayed to the jury.

1. In two related enumerations, Reeves challenges the sufficiency of the evidence, arguing there is no proof of identity and no corroboration of the identification testimony of an accomplice (Thomas). We disagree.

(a) On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*.[2] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.[3]

(b) There is no conflict in the evidence that when Thomas took Investigator Stidd to her amphetamine supplier's home, they went to Reeves's trailer. Stidd saw the tattooed Reeves greet Thomas at the door and moments later saw Reeves with a small cardboard box in his hand. Thomas's custodial statement confirms that she received this box directly from Reeves. She left immediately and gave the box to Stidd, who immediately opened it and recognized the chemical odor of methamphetamine. Reeves possessed $800 in specially identified government money which Thomas gave Reeves in exchange for drugs, plus he had the note from Thomas. Thomas denied buying a car from Reeves. This evidence as to the identity of the seller is suffi-

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Graham v. State*, 236 Ga. App. 673, 675 (1) (512 SE2d 921) (1999).

cient to support the jury's verdict that Reeves is guilty, beyond a reasonable doubt, of trafficking amphetamine as alleged in the indictment.[4]

(c) Reeves contends Thomas is an accomplice whose identification testimony was not corroborated under OCGA § 24-4-8. Under this Code section, testimony which concerns the identity of other participants must be corroborated by some means independent of the testimony of an accomplice. If the corroboration of the accomplice goes only to the history, without identifying the accused, it amounts to no corroboration at all.[5] Nevertheless, slight evidence, which may be circumstantial, connecting the accused with the crime is sufficient corroboration.[6]

The State presented corroborating evidence. First of all, Thomas is not the only witness placing Reeves at the scene with the box of methamphetamine in his hands. Investigator Stidd's testimony corroborates Thomas's on this point. Where two witnesses swear to the same state of facts, the circumstance that one is an accomplice does not render the evidence insufficient as uncorroborated under OCGA § 24-4-8.[7] Second, Thomas's identification of Reeves as the seller is amply and independently corroborated by the following circumstances: the locus (Reeves's home) where Thomas brought Stidd to her seller; Stidd's observation of Reeves with the box that contained the nearly four ounces of methamphetamine; the brief interval of time from Thomas receiving the box from Reeves to her giving the same container to Stidd; and Reeves's possession of $800 in marked money and the Thomas note. This is sufficient independent corroboration under OCGA § 24-4-8 of Thomas's evidence that Reeves is the seller. The enumeration of the general grounds is without merit.

2. Reeves also contends the trial court erred in failing to instruct the jury on whether Thomas was Reeves's accomplice, in order to determine whether her testimony required corroboration. But for aught that appears of record, Reeves submitted no written request to charge on this point.

Since the State did not rely wholly on the testimony of an alleged accomplice to connect the accused to the offense, it was not incumbent upon the trial court to instruct the jury on corroboration in the absence of a timely written request.[8]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

---

[4] *Cook v. State*, 226 Ga. App. 113, 114 (1) (485 SE2d 595) (1997).

[5] *Hill v. State*, 236 Ga. 831, 833 (225 SE2d 281) (1976).

[6] *Selvidge v. State*, 252 Ga. 243, 246 (313 SE2d 84) (1984).

[7] *Farley v. State*, 210 Ga. App. 580 (436 SE2d 770) (1993), citing *Wilson v. State*, 51 Ga. App. 570 (1) (181 SE 134) (1935).

[8] *Garvin v. State*, 144 Ga. App. 396, 398 (4) (240 SE2d 925) (1977). Accord *Robinson v. State*, 84 Ga. 674, hn. 1 (11 SE 544) (1890).

DECIDED APRIL 28, 2000 —
RECONSIDERATION DENIED MAY 16, 2000 

*Thomas M. Strickland,* for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney,* for appellee.